**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| JESSICA KASMER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BRITAX CHILD SAFETY, INC.,<br><br>Defendant. | COMPLAINT – CLASS ACTION<br><br>DEMAND FOR JURY TRIAL<br><br>CASE NO. |

Plaintiff Jessica Kasmer ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against Defendant, Britax Child Safety, Inc. ("Britax" or "Defendant"), and alleges, upon personal knowledge as to her own actions, her counsel's investigation and upon information and good faith belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. This is a consumer protection class action brought by Plaintiff on behalf of herself and other similarly situated consumers who purchased child car seats with Model Nos. B-Safe Gen 2, B-Safe Gen 2 Flexfit, B-Safe Gen 2 Flexfit Plus, B-Safe 35, B-Safe Ultra, and Endeavours child seats (collectively, the "Recalled Products"[1]) for personal or household use and not for resale during the fullest period allowed by law ("Class"[2] or "Class Members").

[1] Plaintiff reserves the right to amend or modify the definition of the Recalled Products based on information learned in discovery and further investigation.

[2] The precise definition of the Class is found below. Plaintiff reserves the right to amend or modify the definition of the Class based on information learned in discovery and further investigation.

2. Britax is a "global market leader in child safety and mobility"[3]. Britax designs, manufactures, markets, distributes, and sells car seats, pushchairs, and highchairs nationwide and internationally, including the Recalled Products that are the subject of this litigation.

3. Seeking to capitalize on the market, Britax sells the Recalled Products online at Amazon.com, Albee Baby, Brixy, Kohl's, Macy's, Pottery Barn Kids, Target, Walmart, and other stores nationwide.

4. Over the course of several decades, Britax gained the trust of consumers, who reasonably believe that Defendant's products, including the defective Recalled Products at issue, are made with quality materials and can be used safely as intended.

5. As a seller of consumer products for children, Defendant had and has a duty to ensure that its products were safe to use, including through regular testing, especially before injecting the products into the stream of commerce for consumers to use.

6. Defendant represents that the Recalled Products are safe for their intended use. In reality, the Recalled Products contain a dangerous defect that resulted in a recall earlier this year.

7. As an industry leader, Defendant conducts significant market research and knows consumers will pay more for baby products advertised as "safe" for their children to use.

8. Britax has identified its car seats as: "Trusted safety from the start. Protects your baby with Britax safety, starting from the first ride home. Features SafeWash High Performance Fabric."[4] And to ensure that parents trust these safety claims over those of its competitors, Britax

[3] *See* https://www.linkedin.com/company/britax/?originalSubdomain=hk (last accessed on September 4, 2026).
[4] *See* https://us.britax.com/shop/retired/britax-b-safe-gen2-infant-car-seat (last accessed on September 4, 2026).

promotes itself as "We're all about safety"[5]. A true copy of Britax official website is below:




9. Plaintiff and Class members reasonably relied on Defendant's misrepresentations and material omissions when purchasing the Recalled Products.

10. Plaintiff and Class members purchased the Recalled Products and paid a price premium based on Defendant's misrepresentations and omissions.

11. On August 20, 2026, Britax voluntarily recalled approximately 114,660 rear-facing infant car seats manufactured between August 17, 2020, and May 16, 2023. The recall encompasses certain B-Safe 35, B-Safe Ultra, B-Safe Gen2, B-Safe Gen2 FlexFit, B-Safe Gen2 FlexFit Plus, and Endeavours models. Britax has acknowledged that extended use and certain wear conditions may cause a screw in one side of the car seat's handle-hub assembly to loosen, allowing the carrying handle to partially detach (the "Carry Handle Defect"). If the Carry Handle Defect occurs, the handle may detach on one side, creating a fall hazard and a risk of injury to the child.

[5] *See* https://us.britax.com/why-britax (last accessed on September 4, 2026).

12. Britax initiated its investigation after receiving an August 1, 2026 consumer complaint reporting a detached handle-hub mount and a related injury.[6] Britax's subsequent retrospective review identified 217 reports alleging handle detachment and 312 additional reports alleging handle looseness, wobbling, or other performance concerns, including three additional reports of injuries since 2016. Nevertheless, when Britax reported the recall to NHTSA on August 20, 2026, the repair kit remained under development and validation:

> Britax is developing and testing a repair kit for the affected car seats, which are no longer in production. The repair will add external bracketing to more securely connect the handle assembly and prevent extended wear from causing a partial detachment.[7]

13. Until the repair kit is installed, Britax has instructed caregivers not to lift or carry the affected car seats by their carrying handles. Consequently, owners are deprived of the use of a central product feature and are left with infant car seats that are less safe, less functional, and less valuable than represented.

14. Because the Recall does not provide any monetary relief to Plaintiff and the Class members, this lawsuit seeks to recover monetary damages on behalf of Plaintiff and Classes of purchasers of the Recalled Products.

## PARTIES

15. Plaintiff Jessica Kasmer is an individual consumer who, at all times material hereto, was a citizen of Bolingbrook, Illinois. Plaintiff Kasmer purchased a Britax B-Safe Gen2 FlexFit Plus infant car seat, Model No. S12771000, on or around September 21, 2022 online for pickup from Buybuy BABY at 324 S Rt 59 Naperville, IL 60540. Prior to making her purchase,

---

[6] *See* https://dailyvoice.com/article/britax-recalls-114k-car-seats-over-loose-handles-nhtsa/ (last accessed on September 4, 2026).
[7] *Id.*

Plaintiff saw and relied on Britax's product representations emphasizing the quality, safety, rigorous standards, and trustworthiness associated with its brand. The Recalled Product was manufactured by Defendant in June 2022. Plaintiff purchased the Recalled Product for use as a child safety seat and relied on Britax's representations that the product was safe and suitable for its intended purpose. At the time of her purchase, Plaintiff was unaware of the defect that later resulted in the recall of the Recalled Product. Had Plaintiff known of the defect and associated safety risks, she would not have purchased the Recalled Product or would have paid less for it.

16. Britax is a South Carolina corporation with its principal place of business located in York County at 4140 Pleasant Road, Fort Mill, South Carolina 29708. At all relevant times hereto, Defendant has designed, built, manufactured, marketed, distributed, promoted, and/or marketed and sold the Recalled Products nationwide, including in Illinois.

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act of 2005 ("CAFA"), because (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one member of the class and defendant are citizens of different States. This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

18. This Court has personal jurisdiction over Defendant because the claims asserted in this complaint arise from Defendant's conduct with this District. Defendant has been afforded due process because it has, at all times relevant to this matter, individually or through its agents, subsidiaries, officers, and/or representatives, operated, conducted, engaged in, and carried on a business venture in Illinois, and/or marketed, advertised, distributed and/or sold the Recalled

Products, committed a statutory violation within Illinois related to the allegations made herein, and caused injuries to Plaintiff Jessica Kasmer and putative Class Members, which arose out of the acts and omissions that occurred in the state of Illinois, during the relevant time period. At that time, Defendant was engaged in business activities in Illinois.

19. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted in this complaint occurred in Illinois. Venue is also proper pursuant to 28 U.S.C. § 1391(c) because Defendant conducts substantial business in this District, has sufficient minimum contacts with this District, and otherwise purposefully avails itself of the markets in this District through the promotion, sale, and marketing of the Recalled Products in this District. Venue is also proper because Plaintiff Kasmer resides in this District.

## COMMON FACTUAL ALLEGATIONS

### Defendant's Recalled Products Endangered Children

20. On August 1, 2026, Britax received a consumer complaint reporting that the handle-hub mount on an infant car seat had detached,[8] causing a related injury.

21. Britax's review identified 217 reports alleging incidents involving handle detachment and an additional 312 reports alleging other handle-performance problems, including looseness and wobbling. These reports included three additional reports of minor injuries since 2016.[9]

---

[8] *See* https://www.whsv.com/2026/08/29/more-than-114k-car-seats-recalled-safety-concerns-heres-what-you-should-know/ (last accessed on September 4, 2026).

[9] *See* https://static.nhtsa.gov/odi/rcl/2026/RCLRPT-26C006-9245.pdf (last accessed on September 4, 2026)



The carry handle on some Britax B-Safe car seats and Endeavours car seats can detach, leading to a fall hazard.
Photo: Consumer Reports



22. The handle condition presents a serious safety risk. Infant car seats are designed to be lifted and transported using their carrying handles while the child is secured inside. If the handle partially detaches during use, the seat and child may fall, creating a risk of injury.

**Britax's Misleading and Deceptive Marketing of the Car Seats**

23. Britax is a global company that has operated in the United States since 1996. Britax manufactures, markets, distributes, and sells car seats. Britax has focused its branding and marketing on safety. Britax's goal is to persuade consumers that they should purchase its products – and pay a higher retail price, because, as its website states: "We're all About Safety" and "Our passion for child safety drives everything we do. It's what brings us together as a team and what brings us to work each day"[10]. A true copy of Britax official website is below:

[10] *See* https://us.britax.com/why-britax/history (last accessed on September 8, 2026).




24. Britax marketed the Recalled Products as combining safety with mobility and convenience. For example, Britax promoted the B-Safe 35 as having an ergonomic handle designed for comfortable carrying and emphasized the ease of transitioning the infant seat between a vehicle and a stroller.

> "The B-Safe 35 Infant Car Seat helps keep baby safe, starting from the first ride home. Full body protection surrounds your baby's head, neck & torso. A crumple zone and high-strength steel frame give you peace of mind while you're on-the-go. SafeCenter LATCH makes it easy to secure and tighten the base in your vehicle. The cover is removable for easy cleaning, and the ergonomic handle is comfortable to carry. Moving from car-to-stroller is quick and easy when you pair this seat with any Britax single stroller to create the perfect travel system[.]"[11]

25. As evidenced by its marketing emphasis on safety, Britax knows that safety is the primary factor in a parent's selection of a Car Seat. For this reason, its advertising uniformly highlights the supposed safety of its car seats.

26. Defendant's safety claims are materially important to Plaintiff and reasonable consumers because millions of parents and caregivers know car seats, such as the Recalled Products at issue in this litigation, are essential to the safety of children while driving, especially in the event of a crash.

---

[11] *See* https://us.britax.com/shop/retired/britax-b-safe-35-infant-car-seat (last accessed on September 8, 2026).

**The Recall Notice**

27. Beginning in the 1990s, the National Highway Traffic Safety Administration ("NHTSA"), as well as professional associations like the American Academy of Pediatrics ("AAP"), developed child passenger safety standards and guidelines that cover a wider range of child passenger safety issues and better protect children from injuries. Among other things, they emphasized the importance of designing and using child safety restraints tailored to the age and size of individual child passengers.

28. On August 20, 2026, Britax notified the NHTSA that it was conducting a voluntary safety recall. NHTSA assigned the recall Campaign Number 26C006[12]. However, the Recall does not fully address the risks faced by consumers who unknowingly used defective car seats.

29. The recall encompasses approximately 114,660 rear-facing infant car seats manufactured between August 17, 2020, and May 16, 2023. This includes specific seats from the B-Safe line as well as the Britax Endeavours infant car seat. The recalled products include certain model numbers within the B-Safe 35, B-Safe Ultra, B-Safe Gen2, B-Safe Gen2 FlexFit, B-Safe Gen2 FlexFit Plus, and Endeavours product lines.[13]

30. The recall was initiated after it was discovered that the carry handle of these car seats can detach, posing a fall hazard when a baby is strapped inside. The issue stems from a screw in the carry handle that can come loose, causing the handle to partially detach. About 1 percent of the Recalled Products are expected to have this defect. [14]

---

[12] *See* https://static.nhtsa.gov/odi/rcl/2026/RCLRPT-26C006-9245.pdf (last accessed on September 8, 2026)
[13] *Id.*
[14] *See* https://www.consumerreports.org/babies-kids/baby-product-recalls/britax-b-safe-infant-car-seat-recall-a6086768743/ (last accessed on September 8, 2026).

31. In its Safety Recall Notice, Britax stated that the Carry Handle Defect does not affect the safety performance of the Recalled Products when they are properly secured in a motor vehicle or attached to a compatible stroller. Britax nevertheless instructed caregivers not to lift or carry the Recalled Products by their carrying handles until the recall repair had been installed.

32. However, Britax's Recall Notice is poorly designed, ineffective, and inadequate for providing consumers with a meaningful remedy for purchasing the Recalled Products. Further, implementing the Recall Notice as-is constitutes an unfair and deceptive trade practice.

33. At the time Britax submitted its Recall Report, no repair was available. Britax was still developing and validating a repair kit for the affected products. Britax stated that the proposed repair would use an external bracketing component to connect the handle-hub assembly more securely to the car seat's shell[15]. However, these modifications significantly diminish the Recalled Products' value as "safe."

34. Moreover, the Recall process burdens consumers who are already living busy lives caring for their children and are not trained nor experienced in designing child products, unlike Defendant.

35. The Recalled Products suffer from the uniform Carry Handle Defect, which, unknown to consumers but known to Defendant, exists at the point of purchase and poses an unreasonable risk of injury to children. As such, the Plaintiff and all reasonable consumers are victims of the unfair bargaining power between them and Defendant based on Defendant's superior industry knowledge.

[15] *See Recall Report* at 30, https://static.nhtsa.gov/odi/rcl/2026/RCLRPT-26C006-9245.pdf (last accessed on September 8, 2026).

**<u>Defendant Possesses Vast Industry Knowledge That the Plaintiff and Reasonable Consumers Do Not Possess</u>**

36. As an industry leader in the baby products market for more than 50 years, Defendant knew that the misrepresentations and material omissions were misleading, deceptive, and unlawful, at the time that Defendant manufactured, marketed, advertised, labeled, and sold the Recalled Products.

37. Defendant knew that the misrepresentations and material omissions would lead reasonable consumers into believing that the Products would not expose their infants and young children to the risk that the carry handle would detach during use, causing the infant carrier to fall while a child was restrained inside. Not only has Defendant utilized a long-standing brand strategy to self-identify the Recalled Products as safe, but Defendant also has an obligation under Section 5 of the Federal Trade Commission Act, codified at 15 U.S.C. § 45, to evaluate its marketing claims from the perspective of the reasonable consumer That means Defendant was statutorily obligated to consider whether the misrepresentations and material omissions, in isolation or conjunction with its marketing strategy, would mislead reasonable consumers into believing that the Recalled Products are free from a carry handle detachment and fall hazard. Thus, Defendant knew that the misrepresentations and material omissions were misleading before it marketed the Notice Products to the Class, including the Plaintiff.

38. Defendant knew of the materiality of its misrepresentations and material omissions to consumers. First, manufacturers and marketers, like Defendant, know safety is paramount for consumers of baby and infant products. Here, Defendant's omissions relate directly to the Recalled Products' safety. Second, Defendant's awareness of the importance of the Recalled Products' safety, specifically safety related to the Notice Products' carry handle,

which could detach during use and cause the infant carrier to fall, is reflected by its misrepresentations and material omissions on the Recalled Products' advertising. Third, it is common sense that information concerning the risk of a carry handle detaching and causing an infant carrier to fall while a child is restrained inside, and the safety of the Recalled Products is material to consumers, as Defendant knows that the risk of serious injury from using the Recalled Products would affect whether consumers purchased the Recalled Products.

39. Defendant deliberately chose to market the Notice Products with the misleading representations and omissions. This decision led consumers to buy or overpay for the Recalled Products, believing they possessed attributes that Defendant falsely advertised and warranted. Therefore, at all relevant times, Defendant knew that the misrepresentations and material omissions would mislead reasonable consumers, such as the Plaintiff, into purchasing the Recalled Products to obtain the product attributes that Defendant deceptively portrayed.

**Defendant Had a Duty to Disclose, Yet Omitted the Carry Handle Defect from Consumers**

40. Defendant had an obligation, at all relevant times, to disclose the material omissions—that the Recalled Products contained the Carry Handle Defect in the carrying handle that can result in a fall hazard and a risk of injury to the child. This crucial information, which Defendant deliberately withheld from consumers, is material to their purchasing decisions and has far-reaching consequences for the safety of infants and young children. Defendant knew that reasonable consumers would perceive the Recalled Products and the absence of the material omissions to mean that the Recalled Products were free from a

defect. It was also known that this attribute was a key factor influencing consumers' choices, causing them to rely on the absence of material omission when deciding to purchase the Recalled Products.

41. Plaintiff and similarly situated consumers would not have purchased the Recalled Products or would not have overpaid a price premium for them if they had known that the Recalled Products posed the safety risk and, therefore, that the Recalled Products do not have the attribute claimed, promised, warranted, advertised, and/or represented. Accordingly, based on Defendant's material omissions, reasonable consumers, including Plaintiff, purchased the Recalled Products to their detriment.

**Economic Injuries to the Plaintiff and Class Members – and the Public at Large**

42. According to Britax, the handle may visibly separate or feel loose before detaching. However, Plaintiff cannot determine at the time of purchase when or whether the screw may loosen sufficiently to allow the carrying handle to detach while a child is being transported.

43. If the Carry Handle Defect manifests, the carrying handle may detach on one side, creating a fall hazard and a risk of injury to the child. NHTSA accordingly described the consequence of the defect as follows: "A child may fall after a partial detachment, increasing the risk of injury."[16]

44. The Recalled Products are discontinued products that Britax no longer manufactures. Nevertheless, because the seats have a designated useful life of approximately six years[17], many Recalled Products manufactured during the recall period remained within

[16] *See* https://people.com/more-than-14-000-britax-car-seats-recalled-after-found-with-defective-handle-12074150 (last accessed on September 8, 2026).
[17] *See When does my car seat expire*, https://us.britax.com/support/frequently-asked-questions/expiration-dates (last accessed on

their stated useful lives when Britax announced the recall.

45. Consequently, until an effective repair is provided and installed, owners cannot safely use the carrying handle, a central and intended feature of an infant carrier. Instead, owners must lift and carry the seat by its shell, depriving them of the portability, functionality, and convenience for which they paid.

46. Even if the proposed repair prevents future handle detachments, it does not compensate Plaintiff and Class members for the period during which they could not safely use the carrying handles, the loss of the seats' intended functionality, the diminished value of the Notice Products, or the amount by which consumers overpaid for recalled and potentially defective products.

47. No reasonable consumer, including Plaintiff, would have paid as much for Defendant's Recalled Products containing the misrepresentations and material omissions had they known the carrying handle of the Recalled Products may detach on one side, creating a fall hazard and a risk of injury to the child.

48. Defendant's false, misleading, and deceptive misrepresentations and material omissions made on the advertising of the Recalled Products are likely to continue to deceive and mislead reasonable consumers and the public, as they have already deceived and misled the Plaintiff and the Class members.

49. Defendant's advertising, labeling, and other public statements deliberately avoided any mention of the risks that the carry handle of the Recalled Products, which may detach on one side, creating a fall hazard and a risk of injury to the child, despite industry

September 8, 2026).

standards indicating that such risks were foreseeable and preventable.

50. Defendant's deceptive practices are particularly egregious given the vulnerability of the consumer base for these Recalled Products—parents, caregivers, and others seeking safe, reliable products for infants and children. Defendant exploited this vulnerability by misleading consumers into believing the Recalled Products were safe.

51. No reasonable consumers, including the Plaintiff and Class members, would purchase unsafe car seats for children to use.

**TOLLING AND ESTOPPEL**

52. Plaintiff and Class members are entitled to statutory and punitive damages, equitable relief, attorneys' fees and costs, and any further relief this Court deems just and proper.

53. Plaintiff and the members of the Class had no way of knowing about Defendant's conduct with respect to the carry handle defect associated with the use of the recalled Product.

54. Neither the Plaintiff nor any other members of the Class, through the exercise of reasonable care, could have discovered the conduct by Defendant alleged herein. Further, Plaintiff and members of the Class did not discover and did not know facts that would have caused a reasonable person to suspect that Defendant was engaged in the conduct alleged herein.

55. For these reasons, all applicable statutes of limitations have been tolled by the discovery rule with respect to claims asserted by the Plaintiff and the Class.

**CLASS ALLEGATIONS**

56. Plaintiff brings this lawsuit as a class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), (b)(3), and/or (c)(4), on behalf of herself and all others similarly situated as members of the following Nationwide Class, and Illinois State Class (collectively, the "Classes"):

57. Plaintiff seeks to represent a class defined as:

> All persons who purchased Recalled Products in the United States for personal or household use during the fullest period provided by law (the "Nationwide Class").

58. In the alternative to the Nationwide Class, Plaintiff also proposes a separate Illinois Subclass, which includes:

> All persons who purchased the Recalled Products in Illinois for personal or household use during the fullest period provided by law (the "Illinois Subclass").

59. Excluded from the Class and Subclasses are: (1) any Judge or Magistrate presiding over this action and any members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entities in which Defendant or its parents and any entities in which Defendant has a controlling interest and their current or former employees, officers, and directors; (3) individuals who allege personal bodily injury resulting from the use of the Recalled Products; and (4) resellers of the Recalled Products.

60. Plaintiff reserves the right to amend the Class definitions if discovery and further investigation reveal that any Class should be expanded, reduced, divided into additional subclasses or State classes under Rule 23(c)(5), or modified in any other way.

61. Certification of Plaintiff's claims for class-wide treatment is appropriate

because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used in individual actions alleging the same claims. This action may also, in the Court's discretion, be maintained as a class action with respect to particular common issues. This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Federal Rule of Civil Procedure 23 and satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of its provisions.

62. ***Numerosity***: The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. Plaintiff is informed and believes that there are approximately 114,660 Recalled Products subject to the recall and that the Classes include thousands of members nationwide, including numerous members of the Illinois Subclass. The precise number and identities of Nationwide Class and Illinois Subclass members may be ascertained from Defendant's records. Class members may be notified of the pendency of this action by recognized, Court-approved notice methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

63. ***Commonality***: This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

a. Whether Defendant engaged in the conduct alleged herein;

b. Whether Defendant designed, advertised, marketed, distributed, sold, or otherwise placed Recalled Products into the stream of commerce in the United States and Illinois;

c. Whether Defendant owed a duty to disclose the Carry Handle Defect

and the safety risks associated with the Recall;

d. Whether Defendant misrepresented the Recalled Products' true performance and safety or the effects of the Recall on performance and safety;

e. Whether Defendant's conduct violates consumer protection statutes, warranty laws, and other laws as asserted herein;

f. Whether Plaintiff and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

g. Whether Plaintiff and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

64. ***Typicality***: Plaintiff's claims are typical of the claims of the Class members whom they seek to represent under Fed. R. Civ. P. 23(a)(3) because Plaintiff and each Class member purchased a Recalled Car Seat and were comparably injured through Defendant's wrongful conduct as described above. Plaintiff and the other Class members suffered damages as a direct proximate result of the same wrongful practices by Defendant. Plaintiff's claims arise from the same practices and courses of conduct that give rise to the claims of the other Class members.

65. ***Adequacy***: Plaintiff will fairly and adequately represent and protect the interests of the Class members as required by Fed. R. Civ. P. 23(a)(4). Plaintiff's interests do not conflict with the interests of the Class members. Plaintiff has retained counsel competent and experienced in complex class action litigation, including consumer product defect and recall litigation and other complex class action proceedings. Plaintiff intends to prosecute this action vigorously. Neither Plaintiff nor her counsel have interests that conflict with the interests of the other Class members. Therefore, the interests of the Class members will be fairly and adequately protected.

66. ***Predominance and superiority***: A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in its management. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, such that it would be impracticable for members of the Class to individually seek redress for Defendant's wrongful conduct.

67. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I
**Violation of State Consumer Protection Statutes**
**(On Behalf of Plaintiff and the Multi-State Class Members)**

68. Plaintiff re-alleges and incorporates by reference all paragraphs as though fully set forth herein

69. The consumer protection statutes of the states for the Multi-State Class are similar to the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") in that they all prohibit the use of unfair or deceptive business practices that mislead reasonable consumers.

70. Defendant intended that each of the members of the Multi-State Class would

read and rely on the front label of the Product, and each of the Multi-State Class members were, in fact, misled by the Recalled Products' front label.

71. Defendant made untrue and misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

72. As a result of Defendant's deceptive front label of the Recalled Products, each member of the Multi-State Class sustained monetary damages.

**COUNT II**
**FRAUDULENT CONCEALMENT**
**(On behalf of Plaintiff and the Nationwide Class)**

73. Plaintiff re-alleges and incorporates by reference all paragraphs as though fully set forth herein.

74. Plaintiff brings this claim on behalf of herself and the Nationwide Class under Illinois law or, in the alternative, under the laws of all fifty states, against Defendant. In the alternative, Plaintiff brings claims on behalf of the Illinois Subclass under Illinois law against Defendant.

75. Defendant is liable for both fraudulent concealment and nondisclosure. *See*, *e.g.*,

Restatement (Second) of Torts §§ 550-51 (1977).

76. Specifically, in the various channels of information through which Defendant sold and marketed Recalled Products, Defendant committed fraud by concealing the Carry Handle Defect and the effects thereof, including that the carry handle could partially detach and create fall hazard and risk of injury.

77. A reasonable customer would not have expected that their Recalled Products contained the Carry Handle Defect.

78. Defendant knew that these facts about the Recalled Products would be important to customers deciding to purchase them. Defendant ensured that Plaintiff and the Classes did not discover this information through actively concealing it. Defendant intended for Plaintiff and the Classes to rely on its misrepresentations and omissions—which they did by paying for the Recalled Products.

79. Defendant had a duty to disclose the Carry Handle Defect.

80. The important facts were known and/or accessible only to the Defendant, including due to its involvement in the design, manufacture, assembly, and testing of the Recalled Products. Defendant also knew that these technical facts were not known to or reasonably discoverable by Plaintiff and the Classes.

81. Defendant also had a duty to disclose the true nature of the Recalled Products in light of its affirmative statements about the Recalled Products with respect to reliability and safety.

82. Defendant knew these statements were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the Carry Handle Defect.

83. Defendant's deceptive actions harmed Plaintiff and the Classes. Because Defendant fraudulently concealed the truth about the Recalled Products, customers who paid for the Recalled Products suffered economic losses. Plaintiff suffered damages including but not limited to overpaying for car seats that did not perform as represented and reasonably

expected. Accordingly, Defendant is liable to Plaintiff and the Classes for damages in an amount to be proven at trial.

84. Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the rights of Plaintiff and the Classes; and to enrich itself. Its misconduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

**COUNT III**
**UNJUST ENRICHMENT**
**(On behalf of Plaintiff and the Nationwide Class, or alternatively the Illinois Class)**

85. Plaintiff re-alleges and incorporates by reference all paragraphs as though fully set forth herein.

86. Plaintiff brings this claim on behalf of herself and the Nationwide Class under Illinois law or, in the alternative, on behalf of the Illinois Class, against Defendant. In the alternative, Plaintiff brings claims on behalf of the Illinois Subclass under Illinois law against Defendant.

87. By reason of its conduct, Defendant caused damages to Plaintiff and the Classes.

88. Plaintiff and the Classes conferred a benefit on Defendant by overpaying for Recalled Products at prices that were artificially inflated by Defendant's misrepresentations, concealment, and omissions alleged above regarding the true nature of the Recalled Products.

89. As a result of Defendant's deception and omissions, Plaintiff and members of the Classes were not aware of the true facts concerning the Recalled Products.

90. Plaintiff and members of the Classes did not benefit from the Defendant's misconduct.

91. Defendant knowingly benefited from its unjust conduct. It sold the Recalled Products for more than what the car seats were worth, and/or accepted the inflated benefits from the sale of the Recalled Products, at the expense of Plaintiff and the Classes.

92. Plaintiff and the Classes conferred tangible and material economic benefits upon Defendant when they purchased the Recalled Products. Defendant profits from sales of the Recalled Products, including through Britax's authorized retail network.

93. Defendant readily accepted and retained these benefits from Plaintiff and the Classes. Plaintiff and the Classes would not have purchased the Recalled Products, or would have paid less for them, had they known the truth about these car seats at the time of purchase. Therefore, Defendant profited from the sale of the Recalled Products to the detriment and expense of Plaintiff and the Classes.

94. It is inequitable and unconscionable for Defendant to retain these benefits because it sold defective car seats, concealed the Carry Handle Defect, and issued a recall without an immediately available repair remedy. Plaintiff and members of the Classes would not have purchased the Recalled Products or would have paid less for them, had Defendant not engaged in these misrepresentations, concealment, and omissions.

95. Plaintiff and the Classes do not have an adequate remedy at law.

96. Equity cannot in good conscience permit Defendant to retain the benefits that it derived from Plaintiff and the Classes through unjust and unlawful acts, and therefore restitution or disgorgement of the amount of Defendant's unjust enrichment is necessary.

97. Plaintiff pleads this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3).

**COUNT IV**
**VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT**
**815 ILCS 505/1 et seq. ("ICFA")**
**(On Behalf of Plaintiff Jessica Kasmer and the Illinois Subclass)**

98. Plaintiff incorporates by reference all allegations in this Complaint as though fully set forth herein.

99. Plaintiff brings this claim on behalf of herself and the Illinois Subclass against Defendant.

100. Defendant engaged in "trade" or "commerce" within the meaning of 815 ILCS 505/1(f).

101. The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce. 815 ILCS 505/2.

102. In the course of its business, Defendant concealed and suppressed material facts concerning the Recalled Products, including the Carry Handle Defect and the lack of an immediately available repair remedy.

103. Plaintiff and Illinois Subclass members had no way of discerning that Defendant's representations were false and misleading because Illinois Subclass members did not have access to Defendant's internal testing and complaint data and analysis.

104. Defendant thus violated the Act by, at minimum: representing that Recalled Products have characteristics, uses, benefits, and qualities which they do not have;

representing that Recalled Products are of a particular standard, quality, and grade when they are not; advertising Recalled Products with the intent not to sell them as advertised; and representing that the subject of a transaction involving Recalled Products has been supplied in accordance with a previous representation when it has not.

105. Defendant intentionally and knowingly misrepresented material facts regarding the Recalled Products with intent to mislead the Illinois Subclass.

106. Defendant intentionally and knowingly misrepresented material facts regarding the Recalled Products with the intent to mislead the Illinois Subclass.

107. Defendant knew or should have known that its conduct violated the ICFA.

108. Defendant owed the Illinois Subclass a duty to disclose the safety risks and true nature of the Recalled Products, because Defendant:

a. possessed exclusive knowledge that it was manufacturing, selling, and distributing the Recalled Products throughout the United States that did not perform as advertised;

b. intentionally concealed the foregoing from Illinois Subclass members; and/or

c. made incomplete representations about the Recalled Products' characteristics, performance, and safety while purposefully withholding material facts that contradicted these representations.

109. Defendant's concealment of the Recalled Products' true characteristics, performance, and safety was material to the Illinois Subclass.

110. Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the Illinois Subclass, about characteristics, performance, and safety of the Recalled Products, the quality of the Defendant's brands, and the true value of the Recalled Products.

111. Defendant's violations present a continuing risk to the Illinois Subclass as well as to the general public, particularly given the fall hazard and risk of injury posed by the Carry Handle Defect. Defendant's unlawful acts and practices complained of herein affect the public interest.

112. Plaintiff and Illinois Subclass members suffered actual damages as a direct and proximate result of Defendant's misrepresentations and concealment of and failure to disclose material information. Defendant had an ongoing duty to all its customers to refrain from unfair and deceptive practices under the ICFA.

113. All purchasers of Recalled Products suffered actual damages as a result of Defendant's deceptive and unfair acts and practices made in the course of Defendant's business.

114. As a direct and proximate result of Defendant's violations of the ICFA, Illinois Subclass members have suffered injury-in-fact and/or actual damage.

115. Pursuant to 815 ILCS 505/10a, Plaintiff and the Illinois Subclass seek an order enjoining Defendant's unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the ICFA.

**COUNT V**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(On Behalf of Plaintiff Jessica Kasmer and the Illinois Subclass)**

116. Plaintiff re-alleges and incorporates by reference all paragraphs as though fully set forth herein.

117. Plaintiff brings this claim on behalf of herself and the Illinois Subclass against Defendant.

118. Defendant is and was at all relevant times a "merchant" with respect to Recalled Products under 810 ILCS 5/2-104, and a "seller" of Recalled Products under 810 ILCS 5/2-103.

119. Defendant is and was at all relevant times a manufacturer of the Recalled Products.

120. The Recalled Products are and were at all relevant times "goods" within the meaning of 810 ILCS 5/2-105.

121. A warranty that the Recalled Products were in merchantable condition and fit for the ordinary purpose for which child safety seats are used is implied by law pursuant to 810 ILCS 5/2-314.

122. These Recalled Products, when sold and at all times thereafter, contained a serious Carry Handle Defect that can lead to partial detachment of the carry handle and attendant safety risks. The Recalled Products were therefore not merchantable, not fit for the ordinary purpose for which child safety seats are used, and did not conform to the promises or affirmations of fact made on their labels.

123. Defendant was provided reasonable notice of these issues by way of its own

internal testing and complaint data and analysis, the regulatory recall, and a pre-suit notice letter sent by Plaintiff.

124. As a direct and proximate result of Defendant's breaches of implied warranty of merchantability, Plaintiff and Subclass Members have been damaged because they did not receive the Product as expressly warranted by Defendant. Plaintiff and Subclass members did not receive the benefit of the bargain and suffered damages by purchasing the misrepresented Recalled Products at a price premium.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant on each of the above-referenced claims and Causes of Action and as follows:

a. An order certifying the Nationwide and Illinois Subclass under the applicable provisions of Rule 23; appointing and designating the Plaintiff to serve as representatives of the Class and applicable State Classes; and appointing the undersigned attorneys to serve as Class Counsel;

b. An order temporarily and permanently enjoining Defendant from continuing the unlawful, deceptive, fraudulent, harmful, and unfair business conduct and practices alleged in this Complaint;

c. Relief in the form of a comprehensive program to fully reimburse and make whole all Class members for all costs and economic losses that resulted from the misconduct described herein;

d. A declaration that Defendant is financially responsible for all Class notices and the administration of Class relief;

e. Costs, restitution, compensatory damages for economic loss and out-of-pocket costs, multiple damages under applicable states' laws, punitive and exemplary damages

under applicable law; and disgorgement, in an amount to be determined at trial;

f. Rescission of all Recalled Product purchases, including reimbursement and/or compensation of the full purchase price of all Recalled Products, including sales taxes and other fees;

g. Any and all applicable statutory and civil penalties;

h. An order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded;

i. An award of costs and attorneys' fees, as allowed by law;

j. Leave to amend this Complaint to conform to the evidence produced at trial; and

k. Such other or further relief as the Court may deem appropriate, just, and equitable.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: September 9, 2026

Respectfully submitted,

*/s/ Kevin Laukaitis*
**LAUKAITIS LAW LLC**
Kevin Laukaitis
Andreas Moffett
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, PR 00907
T: (215) 559-6072
klaukaitis@laukaitislaw.com
amoffett@laukaitislaw.com

Mason A. Barney*
Leslie Pescia*
SIRI & GLIMSTAD LLP
745 Fifth Ave., Suite 500
New York, NY 10151

Telephone: 212-532-1091
mbarney@sirillp.com
lpescia@sirillp.com

*Attorneys for Plaintiff and the Putative Class*